Good morning. Good morning, Your Honors. May it please the Court, I'd like to reserve four minutes for rebuttal. Okay, you have to say your name for us. It's Ahilan Arulanandam, Your Honor. Arulanandam? That's right, Your Honor. Okay, thank you. Thank you, Your Honor. This case arises from the JEFM panel's directive that the parties facilitate an individual petition for review, raising the appointed counsel claim for children. And C.J.L.G.'s case, this child's case, clearly illustrates why the Due Process Clause requires appointed counsel for indigent children in full removal proceedings. The interests that he has at stake here are profound. His life may well be at stake in this proceeding. But his case is extremely complex. The asylum portion of it implicates the law governing particular social groups, which Judge Callahan, Your Honor, in the Ray's case, called elusive, and has vexed lawyers and judges for decades. He also has a separate claim, it may even be a stronger claim, under the special immigrant juvenile category. But the procedural hurdles required to obtain that relief are far beyond the capacity for any unrepresented child to I have a couple questions that I just would like to have factually cleared up, just so as a backdrop, as you proceed to, because you've got, you know, essentially, you've got the, you know, you've got your claim regarding court-appointed counsel, and then you have your regarding full and fair hearing claim. And I don't want to, but, all right, so we have the minor, and we have the mother, and they come across, and they're quite quickly discovered. Now, my regard, my understanding, and I just want to make sure, the mother was previously removed by herself? That's correct, Your Honor. Okay. And the child wasn't with her at that time? That's what the record suggests, Your Honor, yes. Okay. And so, so she already had, she already had that against her. And so her case now of coming over, there's no, it's not associated derivatively. That's correct, Your Honor. She asserted a claim of fear of removal when she came with him on this occasion. And because of that, she was given a reasonable fear interview, which is the procedure afforded to people who are coming back even after they have a prior removal, was found to have a reasonable fear, and also sent into a separate stream of removal proceeding. So she called it withholding-only proceeding. So she also has a claim, it's like an asylum claim, but you're not eligible for asylum, only for withholding. All right, but it's not like anyone, but like, she's not a derivative of him, or vice versa? She is not, Your Honor. All right, and is her claim done, or? No, it's still pending in front of the immigration judge, Your Honor. But yes, it's not derivative. So they have two separate cases. They each have to litigate their cases, her for her, her and him for him. All right, so if your client were to prevail, ultimately, I mean, there would have to be a number of things that would occur, because you've got the counsel claim, but say, you could even lose on that, but you could prevail on sending it back for another hearing, and then we wouldn't know what would happen at the end of the line. That doesn't automatically inert to her, is that correct? Correct, Your Honor. And, you know, the family separation issues, obviously, are a separate matter here, and it's one of the reasons, among several, why, you know, you can't rely on the mom to represent the child, because there are obviously, you know, potential conflicts operating, and, you know, if you have two people who come across together, you would have one represented by one and one represented by another. Okay, and then one other procedural thing. After the hearing in front of the IJ here, there was an appeal to end, and the minor was unrepresented by counsel there. Then there was a BIA hearing, and the minor was represented there, and that, what, I sense under all of this, is there any showing in the record that this minor is ever likely to prevail on anything? Yes, Your Honor. Although, to be clear, under Montes Lopez, this court's decision on the statutory right to counsel, we don't believe there is a prejudice requirement here, and the court was very clear there, held, that there is no prejudice requirement for a denial of counsel claim, partly because it's very hard on an extremely sparse, uncounseled record to reconstruct it in a way to figure out what kinds of prejudice could be operating. But nonetheless, yes, Your Honor, if there is such a requirement, which we do not believe, there are showings of likelihood to prevail here. First, as to special immigrant juvenile status, if he had been advised, you can see just from the even very sparse record here that he's been abandoned by his father for many years. That's said in the I-589. It's said by the mother. It's confirmed in the immigration judge's questioning of CJLG. And that it is in the best interest of the child not to be sent back to Honduras where a gang put a gun to his head. Okay, let's say the IJ had advised him of that at that time. It's my understanding that procedure takes years. So, and let's say then the IJ went forward and did everything else correctly and said, okay, you don't qualify for asylum, withholding, or CAT, or whatever. Is there any requirement that they have to, they get to remain? If there's nothing, you say, okay, you, maybe this state would give you this relief. So immigration judges, the board has reversed immigration judges where they have failed to administratively close cases or continue cases to allow that process to go, to happen, the special immigrant juvenile process. And it's our understanding it may sometimes take longer, but it sometimes takes months where, you know, you have to initiate the proceeding in the state court, but that can happen and it can be resolved, you know, in a- And this has never been initiated up to, even now? No, it has not been initiated. And why is that? Well, he wasn't represented, obviously, below. You know, what we have done now is try to get the removal order vacated because the state court order, at least for immigration purposes, won't do him any good unless the removal order is vacated. But, you know, we're family court has jurisdiction until he's 18. And, you know, obviously, you know, that's something that we, as his counsel now, are monitoring. Your Honor- Can I- I kind of want you to reverse your argument on the court-appointed counsel here, that you read an implied right into court-appointed counsel into the Immigration and Nationality Act, but Congress expressly provided that undocumented immigrants are entitled to counsel, quote, at no expense to the government, unquote. Why isn't that provision controlling? Your Honor, it's not for three reasons. First, the DHS General Counsel rejected the view that that at no expense to the government provision bars the government from being required to pay for counsel in removal proceedings. And what the DHS General Counsel found was that's a description of a right that applies to everyone in removal proceedings, which is you have a right to bring your own lawyer to the proceeding. In that way, it's different from, for example, border inspections, where even if the lawyer is, you know, banging down the- banging on the door, the government's position is that there's no lawyer permitted in this proceeding. But it does not thereby bar the government from ever paying for counsel. And so, you know, that's the first. That's the position of the DHS General Counsel. We cite that in the- It doesn't require it for everyone, Your Honor. But yes, we think- we're not saying that that language requires it. We're saying the fair hearing provision, which is a different provision, right? It's B4- B4B, I think it is. The fair hearing provision requires counsel where counsel is needed to make sure you get a fair hearing. And if you look at other requirements, like the interpreter- But the fair hearing- but if just by statutory construction, I'm having difficulty with your argument that the fair hearing- even though you- that provision writes out at no expense to the government. But, Your Honor, I don't want to belabor it, because obviously the argument is given strength by the constitutional considerations, and that's our primary submission. The last thing I'll just say about it, Your Honor, is the fair hearing requirement has already been read to include other rights, like the right to interpretation. The statute doesn't say anything about there but the BIA has held- and not just that- even pre-hearing discovery, like Your Honor's decision in the SISCU case. That's not- the statute doesn't say that there's a right to pre-hearing discovery, but it's implicit where needed to give you a fair hearing. And that's our statutory argument. Counsel, I'm curious, under the Matthews three-prong test that we would apply here, can you point us to a case where a right to counsel has been held as required when we apply the Matthews three-step test? Yes, Your Honor. Now, not in all parental termination proceedings, but in some of them, if the case is complex enough, there is a requirement under the Supreme Court's decision in Lassiter, and that has been implemented by statute in many states. I'm glad you raised Lassiter, because I think for me this is- for me this is the most important question for the case. Are you advocating here under Lassiter, or under that line of cases, that in every case, a- someone who's under 18 years old is- gets a lawyer, or are you saying that the facts of this case require there to have been a lawyer? Let me answer that two ways, Your Honor. The primary argument in the brief is that children as a class are- require counsel in order to get fair hearings. And the procedure as a whole, the analogy, in other words, to parental termination proceedings here, is removal proceedings conducted under 1229A are the same for adults as for children. And so what we're arguing is that a subset of people in that are entitled to counsel because they needed to get fair hearings, just like Turner v. Rogers in civil contempt proceedings, right? All civil contempt proceedings, no right to appointed counsel. But some, if the government is represented, if the case is particularly complex- Some people are arguing that all minors are entitled to counsel. Yeah, that's our primary submission. The Supreme Court in cases involving children, on the sentencing side, with respect to custody and JDB, they have treated children as a class. Like JDB says, the- the cognitive and other kinds of impairments, you know, capacity differences between children and adults are universal. So that is our primary submission. That being said, I think this is a particularly strong case because the interests at stake here are profound, given- How bold it is is, I guess, for you to decide, Your Honor. But yes, there's not a court which has found that there's an appointed counsel right for children. Jai Lynn comes awfully close. What type of case is that, though? It's a child stopped at the airport, ineffective assistance of counsel claim. There is a lawyer- So the child has a lawyer in that case? Yes, although the court says- this is a critical passage, Your Honor. If you look at the end of the opinion, it's under D, when they're talking about the BIA's error and the immigration judge's error, too. They say, look, the judge, the immigration judge there, considered just stopping the case because the lawyer wasn't ready. But it seems to me what we did in that case is we reaffirmed the right to private counsel, which undocumented immigrants in removal proceedings are entitled to by statute. Aren't you asking us to go far beyond what Congress prescribed? Respectfully, Your Honor, I think the last portion of the opinion does something very different. You know, they say the immigration judge erred because minors are entitled to trained legal assistance. That's a quote, where they have claims that require adjudication. And the court says, look, it was a tough decision- But if Lynn stood for that proposition, you wouldn't have to be making this argument. It doesn't stand for that proposition. You're off of that and extending it. Well, you know, all I'm saying is the court said that you can proceed against an unrepresented adult, but you can't do it against a minor. And the immigration judge had an obligation, sua sponte, to go and procure counsel. These are the things that were said in Jai Lynn. Your Honor can give them whatever force you believe they're warranted. Separate from that, on the service question, forget being in court. Can you serve a child with the notice to appear, just to start the case? This court holds in Flores-Chavez, you cannot. Because the minor, again, are generally not, can't appreciate or navigate proceedings that significantly impact their liberty interests. That's what the court says in Flores-Chavez. And says you can't even give the notice to appear. If they had tried to give the notice to appear just to see JLG, that would be defective service. Yet the government's argument is he can represent himself in court. And that seems, you know, again, it's not a case about counsel. It's just about service. But it seems to follow that if you can't even serve the child, because of the things that we all know about children, it seems to follow that also the child can't be asked to represent himself in court. Don't we have an obligation to consider what this is going to cost? If we agree with you, we're basically imposing what's in the nature of an unfunded mandate on the government. Resources are limited. And if the government pays for this, there are going to be less money to pay for other things. Shouldn't it be up to Congress and not the court to decide how the funds are to be allocated under those circumstances? Well, Your Honor, I agree with the first part, but not the second, in the sense that, Gideon, Lassiter, Turner v. Rogers, all of these also imposed costs on the government. So it's not necessarily up to Congress where the due process clause is involved. But I agree with you, Your Honor, that it is something that the court has to consider. And there's just two points I would make in the context of considering that. And the first is the government pays for a prosecutor in every case involving a child. It's different from a situation like expedited removal, for example, in the Peralta, the recent decision. There, the government is not represented in that expedited removal proceeding. It's summary. Here, in contrast, they pay. So they create the asymmetry of representation by paying for one side. And second, Your Honor, again, if we look to Lassiter, Lassiter, the Supreme Court is looking at this where they're imposing a partial funded mandate on the states for parental termination proceedings. And they say, yes, the financial considerations here matter. But the government also has an interest in proceedings. You know, if this child is entitled to a... Essentially, though, in some of these other proceedings, a lot of the people are citizens, right? In this, what you're asking to pay for here, every single one of the people would not be a citizen and would be a person that was illegally coming to this country. Well, it's not true that every, every, I mean, the group we're talking about... Oh, you're talking minors. Yes, our children. The government, obviously, what then, you know, if you're sort of thinking this through, then why wouldn't everyone dump a minor at the border and get a lawyer and go from and have the, and have that at the government's expense? Well, Your Honor, the, the person still has to prevail on their claim. You know, we're not talking about a situation of, you know, people dumping. I mean, this is a person who fled the most violent city. Well, they don't have to prevail on the claim to get a lawyer if we follow what you're saying. All they would have to do would be cross, get caught, say, I'm a minor and I want to stay, you know, and I've got, I don't want to go back because I'm afraid. That would entitle them to a lawyer, right? Yes, Your Honor, but you'd have to, I just want to stress that that is not the case that we have here. This is the person who's fled one of the most violent cities on earth. You know, the State Department report, although nobody pointed this out because his mother and he had corroborated, there were nine children killed in one month in the year that he was, was fleeing San Pedro Sula. So, you know, this is not a situation where, you know, you've got floodgates of people coming. I know that, I think we, you've briefed a lot of this, but I'd like you to go into the hearing itself and talk about that because your time is going down. Yes, Your Honor. Let me just brief, when you say the hearing itself, you mean the... What you're saying was unfair about the hearing. What wasn't developed about the... Nobody ever asked, why did the gang persecute you or why did they come to get you? Nobody ever asked him, why do you not want to join? You know, nexus is fundamental to asylum law, right? That question is never asked. Nobody ever asked him about his uncle. We know from the I-589 and the testimony, they targeted his uncle. Family is a paradigmatic social group, but nobody ever asked, is there any connection between these two things? And on SIJ, I think I've already explained it, Your Honor. You know, that was apparent from the record that he had been abandoned. I'd like to reserve the remainder of my time if the court permits. If we have additional questions when you come, when we come back, I'll expand it for the panel. Oh, thank you so much. Okay, thank you. Unless the panel wants to ask it right now. Okay. Good morning. Good morning, Your Honors. May it please the court. Kylie Kane on behalf of the government. Your Honor, from the government's perspective, the relevant first question is to look at CGLG's particular case, right? We understand that they're making a larger case about children as a class, but this is an individual person's removal order that the court would have to either affirm or vacate depending on how the decision comes out. And so I think it's appropriate to start with his case first. Here, we think that CGLG received the process he was owed under both the statute and the constitution because he was able to have the opportunity to retain private counsel, proceed with his claim, file an application, testify in support of it. And in fact, he was even able to file a pro se appeal to the Board of Immigration Appeals. Well, there's a couple of things that happened. And maybe you can sort of incorporate this into the argument that, you know, one of the things in Jacinto or Jacinto, we held that it was error for the IJ to instruct the petitioner that she could either speak on behalf of her minor son or retain counsel. This is Ninth Circuit precedent, and we're in the Ninth Circuit, because a parent may, in fact, speak on behalf of her child even if the child does retain counsel. So didn't the IJ commit the same error here by telling Maria on January 30, 2015, that she could either request a little more time to find an attorney or you can go forward today and speak on behalf of your son? It's an interesting question as to whether or not Maria could waive CGLG's right to the statutory right to counsel. I think that's kind of what you're getting at here is whether or not he had to. Well, I'm talking about the language. That's what was said. If you could, it's an either. The court sort of presented it as an either or. And Jacinto takes, has a problem with that. Well, in the sense that she didn't ask for a continuance to receive private counsel or in some other context, because what the immigration judge did here was asked her whether or not she was going to proceed and speak for CGLG. And she said yes. Then she said, the immigration judge said, are you ready to proceed on the claim for asylum? And again, she said yes. So at that juncture, that, I mean, it could have been an opportunity for her to say, I'm not ready. Well, she can still speak on the minor's behalf, even if she has counsel. So it's not an either or proposition. I think that's correct. I mean, the regulations allow for a parent to speak on behalf of a child who's unrepresented as well. And I think that's something that maybe the briefs don't make completely clear. There's some reference to it in the reply brief. But a parent has the ability to under the regulations. Okay. So if you want to say that this particular child didn't need a lawyer here, aside from then the IJs got to develop the record. And here, the IJ missed certain questions that arguably would have, didn't ask about the uncle, didn't, you know, didn't, didn't explain the IJ did give an asylum application to them to fill out, but didn't really explain exactly what asylum was. Basically said, well, just because you're afraid of someone, I don't think that that means that you're going to be able to establish a social group. The IJ didn't, didn't really, the government didn't ask any questions either. I mean, the government didn't just said, just left it be. So it's pretty bare bones. So why shouldn't we send it back to ask some of those questions to exactly find out? Well, if I can speak to counsel's point about prejudice, right, because they're relying on this Montez Lopez decision, which is, which was a denial of a continuance to retain private counsel that this court reviewed and said, actually, the denial of the continuance in that case equated to a statutory denial of the right to counsel. Right. And in that instance, because the right stems from the statute, as opposed to from the constitution, that no prejudice needs to be established. That's not what we have here. So to your questions about if there were error before the immigration judge, if the IJ didn't, under Jacinto, did not fully develop the record in the way that she was required because CJLG was not only a minor, but pro se, because that requirement applies to pro se adults as well, then the remedy would have been for CJLG's attorney before the board to have shown the board what evidence was not developed during the hearing below. And we don't have that here. We have some questions that were posed and they're not dissimilar to the issues that you just raised. Well, why didn't the immigration judge ask about this or that? But it's not just a matter of not asking those questions. We need to know what the answers would have been in order for the court to take a preview look at what the claim is to see if there's prejudice. We don't have that here. And if CJLG had proceeded pro se to the board, you can sort of understand why those arguments wouldn't be made. But he had private counsel before the board. And that private counsel was making the argument that the immigration judge erred, but not providing the board, and therefore on review to this court, any indication of how the claim would have been different. So if you send the case back and he has a private attorney or he has a government appointed attorney or pro bono counsel represent him, we still don't have a clear picture of what evidence is going to be presented that's going to may affect the outcome of the case to establish prejudice. And that's why the government is saying on this record, particularly where there was a counsel to appeal to the board, we just don't have enough to say that it would have made a difference. And so it's whether there was error or there wasn't error under this court's established case law, prejudice needs to be demonstrated on that particular claim. That's what makes this different than Montes Lopez, which was about the denial of statutory denial of counsel. Counsel, what's your response to opposing counsel's citation to Lassiter and urging us to adopt that approach, which, as I understand the case, says that counsel can be appointed, not automatically, right, but it's a case by case analysis. Well, we don't necessarily disagree with the reasoning in Lassiter. I think Lassiter really is in line with the government's position as well, which is that there's no categorical right to counsel, but that in an individual case, the balance may tip one way or the other that may require the assistance of counsel. Now, whether it has to be government funded counsel is a different question. Okay, well, that's the real crux of Lassiter. Lassiter says that in certain circumstances, the government must provide counsel to a parent in that situation. I want to make clear I understand what you just said, because when I read your briefs, I didn't think you were on board with their reading of Lassiter, so I just want to make sure I understand. Sure. If their position, and they'll correct me in the rebuttal if I'm wrong, if their position is that as second place argument they will take, Lassiter is the way we should go, and counsel may be available under certain circumstances, under the discretion of the trial court, and that the government would pay for counsel in those particular cases, not automatically, but case-by-case analysis. Is the government saying now that you agree that that should be the test we adopt? I was with you until you said the government must pay for it, because unlike... That's why we're here. I mean, I don't think there's any... I don't necessarily... Yes and no, because there could be an argument to be made on this record that CJLG just wasn't given adequate time to retain private counsel, because a month and a half after he got done with his merits hearing, he paid for an attorney to represent him before the board. So one of the arguments the government is making is, are we sure that he was even denied a statutory right to counsel, much less a constitutional right? Put that one aside. Okay. That's the big issue, and why all the people are here today. I said that issue, okay? Yes. They want to say, look, not automatically, but sometimes, case-specific, the government will be required to pay for counsel. Okay. Let me parse slightly. There are instances, absolutely, in removal proceedings where the assistance of somebody... It doesn't necessarily have to be counsel under the regulation. It could also be a parent. It could be a custodian. It could be a law student who's being supervised, right? The regulation lists out the types of people who can help represent somebody in removal proceedings. Removal proceedings, unlike parental termination proceedings in LASTER, also have this grand infrastructure of pro bono resources, right? It's required for an immigration judge and a DHS officer who's serving in NTA to provide a list of people who will help minors and adults, actually, who are indigent proceed through their proceedings. So unlike LASTER, where there is not that support structure, yes, I can imagine an individual case where a child would come before the court and the immigration judge would have no ability to effectively communicate with the child, not unlike the interpreter situation that they spoke about before. But the difference with LASTER is that the immigration judge has the ability to call upon some of those agencies and resources who agree to put their names on this list to try to facilitate counsel in a way that wasn't present in LASTER. So I'm with you and them, to a certain extent, all the way up until the point where there's going to be a constitutional right for the government to pay for the attorney. I think the immigration judges already work with the pro bono resources that are in the communities that they serve to help children get counsel. And if an immigration judge can't communicate effectively with the person before them, then yes, they need to do something to remedy that because that would even be a statutory right violated. But to be clear, I mean, so, but the answer is no. The answer is no. You don't agree with them. I don't agree with the appointed counsel part. I mean, yes, I don't agree with that. There may be an instance where an attorney is needed to facilitate the case along through the system. I don't disagree with that, but I'm just saying the government isn't obligated under the statute. But this is kind of the problem with your position, I think, in this case, is that if we have a situation where you confess that a lawyer is needed, but... Not this case, though. Okay. I agree with you. This case may be different and there may be some important differences in this case. But I'm saying as a general matter, we have to write an opinion in this case, presumably, and we got to figure out how it's going to be worded. So I want to be clear we understand. If you say a lawyer is needed to facilitate matters, I think that's what you said. Right. If the person does not have the resources to do that, and there is no pro bono ACLU lawyers ready to parachute in and fix this. Right. What do we do? The immigration judge still has tools in the toolbox. They can continue proceedings. They can administratively close proceedings. The immigration judge, the immigration court can call on some agencies and wait until the representation can be provided. They don't necessarily have to just barrel forward. There's nothing in the regulations that require... Let me ask you this. All right. Do we need to reach that issue in order to decide that case? If there is... All right. Obviously, we have to do the statutory interpretation under Congress and decide if there's a blanket, if right, to being a minor at the border, and whether that per se, and what the appellants are asking for. I don't know that you... But do we need to reach... Judge Owens is teasing out a lassiter that where you're saying there might be something out there. Do we have to decide that to decide this case? Frankly, I don't know that you need to decide either of those questions, because you could find that CJLG received a full and fair hearing. What would the decision past that look like? Even though he got a fair hearing, we're going to speculate about what hypothetical children who go before an immigration judge may or may not be owed. What JEFM said was that... But they're basically arguing for... But they're basically arguing under the statute and how you interpret that relative to the subsequent part of the statute that talks about a fair hearing. There, and then plus the case law, they're saying that there's a due process right. But they're not establishing the prejudice that would allow the court to remand it. Well, that's why you're saying they lose on that issue. But I think we have to decide that issue. I think it's pretty squarely presented. I'm not sure the issue... You could prevail on that issue, but then there's another issue about whether could there be an instance where there might be a requirement, and that's what Judge Owens is asking you about. Do we have to decide that? I don't know why you... I mean, again, it would just be like advisory, I guess. It doesn't even apply to the actual person who's removal order. I think we have to decide whether... We have to decide their issue about whether there's a blanket right. If you reach the question, I guess I would just say this. How do we avoid reaching the question as it's presented here? Well, because it doesn't even apply to the actual person in the case. So you would be deciding what? That there's a hypothetical... But if we found under our case law and if we found under the statutory provisions that it was a requirement, then that's what they're asking us to do. So we have to decide that issue. Well, they want you to put that issue before the individual in this case. They want you to first find that there's a right for all kids and then say because he didn't have a lawyer, his rights were violated. I'm suggesting the reverse. This court routinely evaluates whether somebody got a full and fair hearing, kids, adults, per se, with counsel. It's an incredibly common claim in immigration proceedings. And so you could just decide that he got a full hearing. He was given everything... But if all kids are entitled to that, regardless of whether they get a fair hearing, we have to then... That would affect this. It would affect it, right, if you go in the order that they want you to go in. I think we have to decide that. I don't know, I disagree. Maybe I'm just a judge here. It is up to you, not me. Yes, but I am suggesting that... Let me take you to the... I'm curious on this, the advising of this state procedure. Yes. Now, I think you come out blazing with, well, that's a state procedure and they only have to advise a federal. But there seems to be some case law that says if it's a likelihood of, if they're eligible for that, that the immigration judge might have to. Well, I disagree a little bit because what the immigration judge's obligation is, this was an en banc Lopez-Vasquez decision out of this court, is that it needs to advise about apparent eligibility for relief at the time of the hearing. And as we talk about in the brief, special immigrant juvenile status or classification is not relief. It gives you no rights. You can still be removed even if you get it. So the government is drawing that distinction here. What the immigration judge would have advised about would have been adjustment of status. That is the actual relief. It is an application. You fill it out. The immigration judge can adjudicate it. At the SIJ portion of it, it doesn't take place in immigration court. It doesn't even take place before the agency. Some of it takes place before a state court. And it itself does not relieve the individual of being removed from the country. So it's really the government's position that the immigration judge didn't even have a duty to advise because adjustment would be the relief application. Now, if CJLG had a state court order or had something pending in state court or had something pending before DHS regarding the visa petition, I think we'd be in a little bit different situation because then the person before the immigration judge at the time of the hearing... How would you know about that if it's a pro se and you don't ask about it? Well, let's... I mean, hypothetically, had he had something like that pending and the immigration judge didn't go into that area, we would never know about it then, right? Well, I think it's... I mean, the immigration judge asked whether CJLG had any visa petitions pending. And the answer to that question was no. If the answer to that question had been yes, we'd be in a different situation. And Maria was correct to have anything pending. So the IJ did ask about it, I guess is what I'm saying. If this minor got relief, is there a way that Maria can piggyback on that? No. She is barred from asylum because she's a recidivist, which you heard about just a second ago. If he gets adjustment of status through the SIJ provisions, she is not eligible to ever get any immigration benefit from that because she's a parent. It's in the statute. So his father's abandoned him. The mother can't get any relief. So then if he got that, what would happen to him? Would he just be a minor here with no one? Well, the state court order is there to determine the custody, his custody situation. So I would imagine if he ever does decide to go into state court, what the state court is adjudicating is what to do with him, right? Do they place him in the custody of his mother who's here, who brought him here? Or do they issue some sort of dependency order where he's a ward of the state? If they put him in the custody of his mother who, from what you're saying, doesn't have a right to be here, then does she get to stay? No. Your Honor, I'd like to talk a little bit about some of the questions that you asked my colleagues. One of them does hinge on this idea of Maria's rights. DHS could have chosen to put them into proceedings together when they caught both of them at the border. It was a discretionary call. They didn't have to put her into reinstatement proceedings. They could have put her in proceedings with CJLG. And I'm bringing this up because one of the arguments that the government makes against finding for a categorical constitutional right to counsel is that children and all sort of various flux in terms of what their legal position is, not only to other minors, but also legal position within the country. A lot of the kids that they're talking about when they advocate for counsel for every child who's under the age of 18 are in proceedings with their parents. They don't have their own claim, their derivatives, right? Finding for a categorical right to counsel would mean that the kids in those proceedings get counsel, even though the parents don't, and even though the kids have no actual interest in the relief, right? So it varies very dramatically from CJLG's case, where he's the one who's essentially driving for the claim for relief here, independent of his mother. But these are discretionary calls that the agency makes in terms of also they could have put CJLG in expediter removal proceedings rather than putting him into the full de novo proceedings that the court reviews all the time. So there's discretionary calls along the way that place people in different legal classifications. And it's the government's argument that CJLG is at the lower end of that classification. I think we make that clear in the brief by pointing out that he was caught immediately after being apprehended, no known family ties to the country, you know, all of these things that put him at the closer end to expediter removal than somebody, say, who has a green card, who the government is trying to put into removal proceedings after they've been here for years and years, educated, family ties, things like that. So we just want to make sure that we get on the record that CJLG is at the lower spectrum of interest. And this goes, I think, to Judge Owen's question, there could be a case where somebody has an incredibly important tie to the country. You know, you could have a 16-year-old who's a green card holder, who is in proceedings alone for some reason, parents aren't here, who might be the type of case where the issues are of such importance and DHS counsel is taking an incredibly active role in trying to strip the person of the green card for whatever reason, maybe they committed a crime. As the court knows very well, criminal issues are incredibly complicated, legal, not factual questions, right? So in that type of complicated case with somebody who has shown significant ties to the United States, I could see that the immigration judge would need to take more steps in those cases to assure that either counsel or a parent or a law student or clergyman or somebody is there to help the child through the proceedings. The government here was a bit of a potted plant. Well, I actually say that that was a safeguard. I understand that they think it was because the government didn't want to develop the record, but I actually think under the Turner and Lassiter decisions, it actually helped here that the government wasn't, you know, they keep saying prosecutors going up against a child. Well, here the prosecutor just sat and just let things proceed, wasn't objecting, wasn't introducing their own evidence, wasn't cross-examining the child. You know, I think to a certain extent that that was actually a benefit for CJLG. Well, would it have been helpful if the, or should the IJ have at least said what asylum, what you have to prove for asylum? Because they don't seem to know anything about any of this. Well, asylum is a fact-driven inquiry, right? So the immigration judge asked the relevant questions. The immigration judge did ask about family and did ask about what CJLG responded to the gangs when they tried to recruit him and asked him why and how many times and how old were you and when did this happen and what did you do in response? You know, it was really probing through the testimony. Immigration judges know quite well what it takes to make out a case and the immigration judge here was exhibiting that by asking CJLG the relevant questions. Admittedly, the testimony is pretty short. I don't disagree with that, but part of that is just because the immigration judge can kind of cut to the chase a little bit and ask the questions that are going to make out the claim instead of doing a lot of the background things that we often see in immigration proceedings that, you know, will go on for pages and pages of the testimony. The immigration judge here was just narrowing in. She knew it was a gang claim because Maria had already expressed that CJLG feared gang violence in Honduras and so the immigration judge just, you know, honed in on that and asked the relevant questions and made a determination ultimately that there wasn't going to be the relevant nexus to the immigration statute. Okay, we're taking you over unless my colleagues have any questions. Okay, thank you very much. That'll conclude your time. Thank you. Okay, I'll add an extra minute to you right now. Thank you, Your Honor. And we'll see where we go. Thank you. I'd like to just clarify two procedural points and then make four other points quickly, Your Honor. First, the mother can win withholding of removal and that claim is presented in front of the immigration judge. She was found credible in her reasonable fear interview and that is going forward. So she absolutely can win the right to stay here. And second, the point that CJLG is sort of sort of in expedited removal or could have been or something like that is incorrect. If they had put this child in expedited removal, he would have been found credible in a credible fear interview. He'd have been entitled to that and he would have been found credible. He was found credible by the immigration judge in the full removal proceedings. He would have been entitled to be exactly where he ended up in a full removal proceeding. So he has all the rights that everyone in a full removal proceeding is entitled to. Why don't you address what at the BIA that when he was represented, there's never, you know, there's never been any, you know, what, where's the beef here? You know, there's never been any representation about how this would have, you know, what happened. Yes, Your Honor. That argument. And now, and you're asking us to speculate what could be. Yes, Your Honor. That, so first, the speculation is a product of the fact that he doesn't have counsel, and that's why I go back to Montes. But he had counsel at the BIA. Yes, but the immigration court where you make the record, right, the BIA is an appellate body, right, where you make the record. I know, but what you say is this is why he was prejudiced, because if we were allowed to have a full hearing, this is what we would be able to say, and this is how he would be able to establish that he was entitled to relief, and the fact that the IJ didn't develop the record, none of this ever came to light. Right, understood, Your Honor. The idea that you have to show exactly, that you were eligible for some relief, and exactly what evidence you would have presented, has been repeatedly rejected by this court. This government has, the government has made this argument and lost it in Moran Enriquez as to a 212 age claim, in Cano Merida as to an asylum claim. The court says you don't have to show exactly what evidence. And if you think about it, it would totally transform the way these cases are litigated on appeal. If we say the interpreter was inaccurate, as in Perez Lastor, well then where's the declaration saying what you would have testified to? If you say, hey, the immigration judge should have advised about 212 age, as in the Bui case, right, the court says very clearly, we don't know for sure that they qualify, that there's a qualifying visa. They say in Moran Enriquez, we don't know for sure that they would have met the hardship requirement. That is not required. What you have to show is that it may have made a difference, that it potentially could have affected. But did the attorney even show May at the BIA? Yes, Your Honor. Absolutely, Your Honor. It's their, especially immigrant juvenile, I mean, he's prima facie eligible. You have to show that you've been abandoned. You have to show that it's in the best interest of the child. If you can do those two things, then you have to go get the state court order. And as I said earlier, the BIA is reversing cases. We cite them in the reply brief at footnote 12. They're unpublished, but they're reversing immigration judges who fail to give continuances to allow that to happen. And as to asylum, now we know, Your Honor knows better than me, you know, there are still gang claims that are viable under MEVG, the BIA's decision. Here we've got the family possibility with the uncle, and we've got the fact that he reported on the gang. And he says, his very sparse testimony, he says, you know, they, the threat to his life is coming from the fact that he reported it and that they found out about that. And that is also a viable claim under Enrique's rebus. So there's certainly enough to establish it if there is a prejudice requirement, which again, we don't believe there is. Just two other very quick points, Your Honor. We would like the court to hold that the immigration judge could not have proceeded against CJLG without an attorney. And then if the holding could be, the primary submission is that is because he is a child, right? And because he's a child for that, you know, the narrower holding potentially, and we believe that's consistent with Lassiter and Turner v. Rogers, because some adults can go forward without attorneys, but children cannot, right? The narrower holding would be, if we're so lucky, would be, this is a case involving asylum. It's a case involving a particular social group. And so it is a complex case where there is a lot at stake. And because of that, the, this is a very strong case for counsel, and that would be the narrower holding. But either way, what we're asking for is a holding that you cannot proceed without an attorney. We agree with the government that there are many ways to implement that rule. You know, there are pro bono programs. They weren't available for him because he's not classified as unaccompanied, right? So that's the reason why there's no pro bono resources available in his case, because the funding... But everyone managed to step up when we had a good legal issue. Your Honor, we got this case, you know, as you know, through the JAFM information exchange that had happened. But to be clear, that is the basic problem here, is that the absence of pro bono resources for this, but even in other cases, there's a shortage. You know, I'm not going to stand here and say that every child that needs an attorney is getting represented. So unless my colleagues have any additional questions, I've given you extra time and you're, and I've let you go over, but this is a very important case for both sides. And I think that you both, we want to thank you for the, both of your arguments and in terms of putting the best legal arguments for each of your sides forward. Thank you. Thank you very much, Your Honor. This matter then will stand submitted and the court will be in recess until tomorrow at 9 a.m. All rise. This court for this session stands adjourned.
judges: Callahan, Owens, Faber